IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| BLUELINX CORPORATION, a Georgia corporation, | § § § § § | |
| Plaintiff, | § § | |
| v. | § § | CASE NO. _____ |
| JOSEPH EDWARDS; TRENT TUCKER; and 3WOOD WHOLESALE LLC, a Texas limited liability corporation, | § § § § § | |
| Defendants. | § § | |

**COMPLAINT & APPLICATION FOR TEMPORARY RESTRAINING ORDER, PRELIMINARY INJUNCTION, & PERMANENT INJUNCTION**

NOW COMES Plaintiff BlueLinx Corporation, a Georgia corporation ("***BlueLinx***", the "***Company***" or "***Plaintiff***"), and files this Complaint and Application for Temporary Restraining Order, Preliminary Injunction, and Permanent Injunction against Defendants Joseph Edwards ("***Edwards***"), Trent Tucker ("***Tucker***"), and 3Wood Wholesale LLC, a Texas limited liability corporation ("***3Wood***"), (collectively the "***Defendants***"), showing this Court as follows:

### I.     PARTIES

1. BlueLinx is a Georgia corporation, with its principal place of business at 1950 Spectrum Circle, Suite 300, Marietta, Georgia 30067. BlueLinx is a citizen of Georgia for purposes of diversity jurisdiction.

2. Edwards is a citizen of the State of Texas for purposes of diversity jurisdiction and resides at 3909 Pleasant Valley, Sachse, Texas 75048. Edwards may be served at this address.

3. Tucker is a citizen of the State of Texas for purposes of diversity jurisdiction and resides at 5619 Preston Oaks Road, Apartment 802, Dallas, Texas 75254. Tucker may be served at this address.

1

4. 3Wood is a Texas limited liability corporation with its principal place of business at 775 W. 1200 North, Suite 100, Springville, Utah 84663, and may be served with process on its Registered Agent Fielding Morley, 1598 FM-3211, Greenville, Texas 75402.

## II.    JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because BlueLinx asserts a claim arising under federal law. This Court has subject matter jurisdiction over BlueLinx's remaining claims pursuant to 28 U.S.C. § 1367 because BlueLinx's other claims form part of the same case or controversy as its federal claim.

6. The Court also has jurisdiction over this case pursuant to 28 U.S.C. § 1332 because this action is civil in nature, complete diversity of citizenship exists, and the amount in controversy exceeds the jurisdictional minimum of $75,000.00, exclusive of interest and costs.

7. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because all Defendants reside within this district and because a substantial part of the acts or omissions giving rise to BlueLinx's claims occurred within this district.

## III.    FACTUAL BACKGROUND

8. BlueLinx is a building products distributor for residential and commercial construction and delivers building products to retailers, suppliers and contractors throughout the United States of America. Among the products supplied and distributed by BlueLinx are siding and trim, molding and millwork, lumber, plywood, OSB, and engineered lumber products such as I-Joists, LVL, Glulam, Rim Board and AFL.

9. BlueLinx maintains offices and distribution centers throughout the United States of America including in the Dallas-Ft. Worth area. The Dallas-Ft. Worth BlueLinx facility sells and delivers building supplies used both inside and outside of Texas.

10. BlueLinx employs a number of sales representatives ("Territory Managers") to market and sell its products to its customers.

11. Edwards and Tucker were both employed by BlueLinx as Territory Managers working out of the Dallas-Ft. Worth BlueLinx office and serviced clients located both within and outside of Texas.

12. Both Edwards and Tucker were long-term employees of BlueLinx with access to the Company's customers and confidential and proprietary information, including the Company's trade secrets, to which they were given access for purposes of providing services on behalf of BlueLinx.

13. Both Edwards and Tucker were provided Company laptops (and BlueLinx email addresses to communicate internally and with customers and vendors) by which they could access that data maintained within "Agility", the Company's enterprise resource planning platform ("ERP"), necessary to perform their jobs. Included within Agility is information related to inventory levels, "market" and BlueLinx cost associated with products offered, pricing data, and data related to BlueLinx customers and vendors – all of which is competitively sensitive. The customer information Edwards and Tucker could access through the ERP included customer lists providing delivery sites serviced by the Company and specific customer contact information – information not publicly available or that could be recreated from memory.

14. BlueLinx considers and treats its inventory, cost, pricing, vendor and customer lists and data (the "*Trade Secrets*") (all of which would be valuable to its competitors) as confidential, restricts access to such information to those within the Company who need to know such information, and takes reasonable steps to maintain the secrecy of such information.

15. BlueLinx does not share or disclose its Trade Secrets or other confidential business information with or to its competitors or the public.

16. BlueLinx maintains and enforces both an Employee Handbook and a Code of Conduct. All employees of the Company are required to acknowledge both in writing.

17. The Employee Handbook and the Code of Conduct restrict the use and disclosure of confidential information and BlueLinx Trade Secrets and require the immediate return of such material upon the termination of employment with the Company.

18. The BlueLinx Employee Handbook provides in relevant part:

> Company confidential and proprietary information could be very helpful to investors, suppliers and the Company's competitors, to the detriment of the Company. To help protect the Company's interests, all employees must follow these guidelines:
>
> - No employee may use, either for his or her own personal benefit or for the benefit of others, Company information which is not publicly known.
> - No employee may disclose trade secrets, proprietary or confidential information to other employees or outsiders, except as required in the conduct of Company business.

A true and correct copy of the BlueLinx Employee Handbook is attached hereto as <u>Exhibit A</u>.

19. Similarly, the Company's Code of Conduct states in relevant part:

> - Within the Company, information flows very freely. As a result, you may have access to or become aware of Company confidential and/or proprietary information – that is, information relating to the Company's business which is not generally or publicly known and is therefore of a sensitive nature. This information includes, but is not limited to:
> - technical information related to the Company's products, services, specifications and operations;
> - information relating to the Company's sales and marketing strategies, sales figures, expansion plans, current and prospective customers, distributors, agents and suppliers and lists derived therefrom;
> - information relating to the Company's financial performance and objectives, service and product cost structure, pricing strategies,

> audit reports, business plans, facilities lease agreements, capital investment plans and any joint venture, merger, and acquisition strategies;
>
> …
>
> Company confidential or proprietary information could be very helpful to investors, suppliers and the Company's competitors, to the detriment of the Company. To help protect the Company's interests, all employees must follow these guidelines:
> - No employee may use, either for his or her own personal benefit or for the benefit of others, Company information which is not publicly known.
> - No employee may disclose trade secrets, proprietary or confidential information to other employees or outsiders, except as required in the conduct of Company business.

A true and correct copy of the Code of Conduct is attached hereto as Exhibit B.

20. Additionally, the Employee Handbook provides, in relevant part:

> [Employees] are required to return all company property (e.g., computers, vehicles, passwords, uniforms, ID badges, credit cards) that is in their possession or control in the event of termination of employment, resignation, retirement or layoff or immediately upon request … No information belonging to the Company can be copied for the [employee's] use.

21. Edwards and Tucker acknowledged in writing their obligations under both the Employee Handbook and the Code of Conduct. (See, Edwards' and Tucker's acknowledgments attached hereto as Exhibits C and D, respectively).

22. In addition to the restrictions set forth in the Company's Employee Handbook and Code of Conduct, BlueLinx has implemented a variety of other reasonable measures to protect its Trade Secrets.

23. BlueLinx restricts access to its ERP system, Agility, on which its proprietary information and Trade Secrets are stored.

24. BlueLinx's ERP system can only be accessed through individualized, password-protected login credentials assigned to authorized individuals.

5

25. Not all employees have access to all data contained within the ERP system. Instead, individuals' access is limited to that information that they need to know for purposes of performing their specific jobs.

26. BlueLinx also maintains physical security at each of its locations ensuring unauthorized personnel cannot access Company facilities. The BlueLinx Dallas-Ft Worth facility, for example, requires code pad access by all employees and the access code is not disclosed to non-employees.

27. Todd Skaggs ("*Skaggs*") is a Regional Vice President of BlueLinx and is responsible for the Western region of the United States, including the BlueLinx facility located in the Dallas-Ft. Worth area out of which Edwards and Tucker worked.

28. Having heard rumors Edwards and Tucker were disgruntled, Skaggs attempted to schedule a meeting with the two on Friday, October 20, 2023, while he was in Dallas.

29. Edwards and Tucker, however, refused to meet with Skaggs, indicating they were unavailable as they were at their lake house entertaining a customer.

30. On Monday, October 23, 2023, with no prior notice, Edwards and Tucker abruptly resigned their employment.

31. Besides their Company laptops, neither Edwards nor Tucker returned any Company property, documents or data in their possession to BlueLinx upon their resignations.

32. Prior to their resignations, Edwards and Tucker approached an employee of BlueLinx soliciting his employment for a new competitive venture.

33. Almost immediately following their resignations, Edwards and Tucker approached another employee of BlueLinx soliciting his employment for a new competitive venture.

34. Immediately upon the resignations of Edwards and Tucker, BlueLinx began investigating the potentially competitive conduct of Edwards and Tucker. As part of its investigation, the Company collected and reviewed all outgoing email from the BlueLinx email accounts of Edwards and Tucker for the sixty (60) days prior to their resignations.

35. This investigation disclosed that both Edwards and Tucker repeatedly emailed confidential information, including Trade Secrets, related to the Company's suppliers, inventory, cost, pricing and customers to their personal email addresses and other external email addresses.

36. On October 5, 2023, alone, within a single hour, Edwards accessed the Company's Agility ERP and created three separate spreadsheets containing specific customer contact information and forwarded each of the three spreadsheets to his home email address.

37. Additionally, Edwards emailed spreadsheets containing inventory cost data and pricing to his personal email addresses or other external email addresses.

38. Edwards also forwarded other emails and Company purchase orders to his personal email addresses, or other external email addresses, containing specific information regarding items ordered by Company customers, the quantities ordered and the pricing offered by BlueLinx.

39. Tucker emailed confidential sales reports to a third-party and forwarded his entire contact folder to his personal email address.

40. The Trade Secrets obtained by Edwards and Tucker contained confidential and proprietary information for customers, vendors, and suppliers in Texas and other states.

41. There was no business reason, particular to BlueLinx, for Edwards and Tucker to forward such information to their personal email accounts, or other external addresses, as all such information was available to them at all times during their employment using their Company laptop computers.

42. Further investigation uncovered that on or about October 2, 2023, Edwards and two other individuals, John Davis and McKay Morley, formed a Utah LLC, 3Wood Wholesale LLC, and registered that entity to do business in the state of Texas. *See* Exhibit E.

43. 3Wood has already opened a distribution facility in Dallas located at 1598 FM-3211, Greenville, Texas 75402, with product on site and, upon information and belief, is already providing products competitive with those offered by BlueLinx to customers.

44. 3Wood has also already posted a public website found at: https://www.3woodco.com/, which has published partnerships with some of BlueLinx's suppliers. This further demonstrates an intent by Edwards and Tucker to utilize BlueLinx's supplier lists and relationships for personal gain to grow a competing business.

45. Edwards' and Tucker's wrongful copying and disclosure of confidential information and Trade Secrets to their personal and other external email accounts occurred prior to their resignation of employment.

46. Upon information and belief, Edwards and Tucker have disclosed the Company's confidential information, including BlueLinx Trade Secrets, to 3Wood, and Tucker, Edwards and 3Wood are using such information to operate a business in competition with the Company.

47. Because Edwards and Tucker are managers and/or executives of 3Wood, 3Wood, along with its members, managers and executives, authorized, participated in, ratified, and condoned Edwards' and Tucker's collection, retention and use of BlueLinx confidential information and Trade Secrets.

### IV. CAUSES OF ACTION

### COUNT I – TRADE SECRET MISAPPROPRIATION UNDER THE DEFEND TRADE SECRETS ACT (18 U.S.C. § 1836, *et seq.*)
**(DEFENDANTS EDWARDS, TUCKER AND 3WOOD)**

48. BlueLinx incorporates its allegations contained in Paragraphs 1 through 47 of its Complaint as specifically set forth and incorporated herein.

49. BlueLinx is the developer and owner of the Trade Secrets.

50. At all relevant times, BlueLinx has taken, and continues to undertake, significant measures to maintain the secrecy of the Trade Secrets, including, but not limited to, by restricting access to the Trade Secrets through password-protected accounts; password protecting its internal systems; encrypting and requiring authentication to access certain files within its systems; and alerting employees to the proper handling of BlueLinx's proprietary information and Trade Secrets.

51. This secrecy provides independent economic value to the Trade Secrets.

52. Edwards and Tucker misappropriated the Trade Secrets.

53. As alleged above, in violation of BlueLinx's rights, Edwards' and Tucker's misappropriation was willful, malicious, and in bad faith because, among other things, they were actually aware of the proprietary and trade secret nature of BlueLinx's Trade Secrets, they were actually aware they were not authorized to download, copy, retain, disclose or use BlueLinx's Trade Secrets on their own behalf or on behalf of any third party, and their actions were to obtain a commercial advantage for 3Wood.

54. Defendants were unjustly enriched by their misappropriation, which allowed them to use BlueLinx's Trade Secrets for 3Wood's commercial benefit and the personal enrichment of Edwards and Tucker.

55. BlueLinx has also suffered actual damages from Defendants' misappropriation in an amount to be proven at trial.

56. Edwards and Tucker are directly liable for the misappropriation of BlueLinx's Trade Secrets.

57. 3Wood is vicariously liable for Edwards' and Tucker's misappropriation, at least after its creation.

58. BlueLinx is entitled to judgment against all Defendants for misappropriation of its Trade Secrets, including, without limitation, a monetary award in the amount of Defendants' unjust enrichment and BlueLinx's actual loss, or a reasonable royalty for Defendants' unauthorized disclosure or use of BlueLinx's Trade Secrets, plus exemplary damages, and reasonable attorneys' fees.

59. In addition to the foregoing, BlueLinx has suffered irreparable and ongoing injury from the Defendants' misappropriation.

60. On information and belief, Defendants continue to utilize the Trade Secrets obtained through their misappropriation for their own economic benefit, including by utilizing BlueLinx's Trade Secrets to solicit customers and provide products through 3Wood.

61. Defendants' retention and use of BlueLinx's Trade Secrets, or unauthorized derivatives of the same, poses the imminent risk of the permanent diminishment or loss of BlueLinx's value in its Trade Secrets.

62. The requested monetary relief alone is inadequate to compensate for BlueLinx's injury.

63. A remedy in equity is warranted because, among other things, the balance of hardships between BlueLinx (which independently developed its Trade Secrets through substantial investment) and Defendants (who misappropriated and benefited from the Trade Secrets without similar investment) favors BlueLinx.

64. Equitable relief protecting BlueLinx's Trade Secrets would not be contrary to the public interest because it would protect BlueLinx's property rights, would protect BlueLinx's investment in the development of its Trade Secrets, and would promote the related incentives for others to independently develop their own trade secrets without fear they may be misappropriated by a second comer who would use such trade secrets without incurring the costs of their development.

65. Accordingly, BlueLinx is entitled to permanent injunctive relief enjoining the Defendants' misappropriation and continued use of BlueLinx Trade Secrets, in addition to, or as an alternative to, the monetary relief requested above.

## COUNT II – BREACH OF FIDUCIARY DUTY AND DUTY OF LOYALTY
### (DEFENDANTS EDWARDS AND TUCKER)

66. BlueLinx incorporates its allegations contained in Paragraphs 1 through 65 of its Complaint as specifically set forth and incorporated herein.

67. During their employment, Edwards and Tucker had access to BlueLinx's confidential information, including inventory, cost, pricing, and vendor and customer lists and data.

68. As Territory Managers, Edwards and Tucker held an elevated position of confidence and trust and had an obligation to maintain the confidential information of their employer. Therefore, Edwards and Tucker owed a fiduciary duty to BlueLinx during their employment.

69. Edwards' and Tucker's duty included, but was not limited to, acting in BlueLinx's best interests, not using BlueLinx's confidential, proprietary and Trade Secret information to compete with BlueLinx, and maintaining BlueLinx's confidential and proprietary information with the utmost confidence.

70. Edwards and Tucker breached their fiduciary duties owed to BlueLinx by misappropriating confidential and privileged information maintained by BlueLinx. This includes utilizing company resources to start a competing business and stealing BlueLinx's Trade Secrets by forwarding confidential and proprietary information to their personal email addresses.

71. Edwards and Tucker further breached their fiduciary duties owed to BlueLinx by soliciting BlueLinx's employees for a competitive venture while still employed at BlueLinx.

72. Edwards' and Tucker's willful breach of their fiduciary duties and duty of loyalty to BlueLinx proximately caused BlueLinx's damages.

73. BlueLinx seeks actual damages, in an amount to be proven at the trial of this action, exemplary damages, injunctive relief, interest, and court costs for Edwards' and Tucker's breaches of their fiduciary duties to BlueLinx.

## V. APPLICATION FOR TEMPORARY RESTRAINING ORDER, PRELIMINARY & PERMANENT INJUNCTIONS

74. Defendants' actions are wrongful as they have misappropriated BlueLinx's confidential, proprietary, and Trade Secret information. Should Defendants' conduct go undisturbed, Defendants could continue to disclose and otherwise misuse BlueLinx's confidential and Trade Secret information to BlueLinx's detriment. Moreover, Defendants' unauthorized possession of BlueLinx's Trade Secret information will continue to cause irreparable harm to BlueLinx for which there is no adequate remedy at law. Such harm is not readily reduced to dollar damages.

75. There is a substantial likelihood that BlueLinx will prevail on the merits. As described above, Defendants violated the Defend Trade Secrets Act and the terms of the Employee Handbook and Code of Conduct by misappropriating BlueLinx's confidential, proprietary, and Trade Secret information.

76. BlueLinx seeks a temporary restraining order until a date is set for hearing—not to exceed fourteen (14) days from the date of the order—on its application for a preliminary injunction, and, after notice and hearing, a preliminary injunction restricting Defendants from continuing to retain, use or disclose BlueLinx's Trade Secret information, or to call upon, solicit or distribute products to BlueLinx customers disclosed in the Trade Secrets, until a trial on the merits of BlueLinx's claims is held. A temporary restraining order and preliminary injunction are necessary to properly preserve BlueLinx's rights pending a trial on the merits and is warranted under the Defend Trade Secrets Act and applicable law.

77. The threat of injury to BlueLinx outweighs any possible damage to Defendants as an injunction would simply require Defendants to return and discontinue the inappropriate use of the Trade Secrets which they have misappropriated.

78. The public interest is served by an injunction as it will protect BlueLinx's Trade Secret information.

WHEREFORE, BlueLinx respectfully prays that the Court enter judgment in its favor and against Defendants on BlueLinx's Complaint as follows:

a) A judgment against all Defendants on BlueLinx's claim under the Defend Trade Secrets Act in an amount to be proven at trial, including, but not limited to, restitution, compensatory damages or a reasonable royalty, exemplary damages, and attorneys' fees;

b) The issuance of a permanent injunction against Defendants on BlueLinx's claim under the Defend Trade Secrets Act;

c)  A judgment against Edwards and Tucker on BlueLinx's claim for breach of fiduciary duties and duty of loyalty under Texas law in an amount to be proven at trial, including, but not limited to, compensatory and exemplary damages; and

d)  The issuance of a temporary restraining order requiring Defendants to return all confidential, proprietary, and Trade Secret information belonging to BlueLinx that is still within their possession, custody, or control, not to use or disclose such Trade Secret information and prohibiting Defendants from soliciting or distributing products to BlueLinx customers disclosed in the Trade Secrets;

e)  The issuance of a permanent injunction requiring Defendants not to use or disclose BlueLinx's Trade Secrets and prohibiting Defendants from soliciting or distributing products to BlueLinx customers disclosed in the Trade Secrets; and,

f)  Awarding such other and further relief as the Court deems just and proper.

Respectfully submitted this 9th day of November 2023.

**BRYAN CAVE LEIGHTON PAISNER LLP**

By:  */s/ Kyle S. Hirsch*
Kyle S. Hirsch
Texas Bar No. 24117262
Kyle.Hirsch@bclplaw.com
Brooke V. Ingoglia
Texas Bar No. 24136909
Brooke.Ingoglia@bclplaw.com

2200 Ross Avenue, Suite 4200W
Dallas, Texas 75201
Telephone: 214-721-8000
Facsimile: 214-721-8100

- and -

Christopher P. Galanek
Georgia Bar No. 282390
Christopher.Galanek@bclplaw.com
**BRYAN CAVE LEIGHTON PAISNER LLP**
One Atlantic Center, Fourteenth Floor
1201 West Peachtree Street, N.W.
Atlanta, Georgia 30309
Telephone: 404-572-6600

*Attorneys for Plaintiff BlueLinx Corporation*