IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **BLUELINX CORPORATION,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. **3:23-CV-2503-L** |
| | § | |
| **JOSEPH EDWARDS; TRENT** | § | |
| **TUCKER; and 3WOOD** | § | |
| **WHOLESALE, LLC,** | § | |
| | § | |
| Defendants. | § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Before the court is Plaintiff's Motion for Preliminary Injunction ("Motion") (Doc. 17), which was filed on December 5, 2023, after the court denied Plaintiff's Emergency Motion for Temporary Restraining Order on November 14, 2023.  Also before the court are Plaintiff's Motions for Leave to File Certain Exhibits Under Seal (Docs. 19, 20),[1] filed December 5, 2023. For the reasons herein explained, the court **denies** these motions by Plaintiff (Docs. 17, 19, 20).

## I.  Factual and Procedural Background

BlueLinx Corporation ("BlueLinx" or "Plaintiff") distributes building products that are used in residential and commercial construction, and it delivers building products to retailers, suppliers, and contractors throughout the United States. The products supplied and distributed by BlueLinx include siding and trim, molding and millwork, lumber, plywood, OSB, and engineered lumber products such as I-Joists, LVL, Glulam, Rim Board and AFL. On November 9, 2023, BlueLinx brought this action against former employees Joseph Edwards ("Edwards") and Trent Tucker ("Tucker"), as well as 3Wood Wholesale, LLC ("3Wood"), the company formed by them.  Before resigning, Edwards and Tucker were employed by BlueLinx as territory

---

[1] These motions by Plaintiff appear to be identical. *See* Docs. 19, 20.

sales representatives and worked out of BlueLinx's office in the Dallas-Fort Worth area of Texas marketing and selling BlueLinx's products to customers within and outside of Texas.

In Count I of its Complaint (Doc. 1), BlueLinx alleges that Edwards and Tucker misappropriated its confidential information in violation of the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836, *et seq.*, and that 3Wood benefited from the alleged misappropriation:

> 43.    3Wood has already opened a distribution facility in Dallas located at 1598 FM- 3211, Greenville, Texas 75402, with product on site and, upon information and belief, is already providing products competitive with those offered by BlueLinx to customers.

> 44.    3Wood has also already posted a public website found at: https://www.3woodco.com/, which has published partnerships with some of BlueLinx's suppliers. This further demonstrates an intent by Edwards and Tucker to utilize BlueLinx's supplier lists and relationships for personal gain to grow a competing business.

> 45.    Edwards' and Tucker's wrongful copying and disclosure of confidential information and Trade Secrets to their personal and other external email accounts occurred prior to their resignation of employment.

> 46.    Upon information and belief, Edwards and Tucker have disclosed the Company's confidential information, including BlueLinx Trade Secrets, to 3Wood, and Tucker, Edwards and 3Wood are using such information to operate a business in competition with the Company.

> 47.    Because Edwards and Tucker are managers and/or executives of 3Wood, 3Wood, along with its members, managers and executives, authorized, participated in, ratified, and condoned Edwards' and Tucker's collection, retention and use of BlueLinx confidential information and Trade Secrets.

Pl.'s Compl. ¶¶ 42-47.

Plaintiff's Complaint defines "Trade Secrets" as "inventory, cost, pricing, vendor and customer lists and data" that BlueLinx "considers and treats . . . as confidential" and "would be valuable to its competitors."  Pl.'s Compl. ¶ 14.  Plaintiff further alleges that it "restricts access to such information to those within the Company who need to know such information," and it "takes reasonable steps to maintain the secrecy of such information."  *Id.* Plaintiff's Motion

expands on this slightly by defining "Trade Secrets" as BlueLinx's trade secrets as "customer lists, inventory levels, pricing data, and market costs associated with different product offerings" that Edwards and Tucker had access to via "Agility," BlueLinx's  "enterprise resource planning platform" where "this confidential and proprietary information is maintained."  Pl.'s Mot. 2.

Count II of BlueLinx's Complaint includes claims for alleged breaches of fiduciary duty and loyalty against Edwards and Tucker, which are not the basis for the current Motion and request for a preliminary injunction.  BlueLinx's Complaint also includes a request for injunctive relief against Edwards, Tucker, and 3Wood ("Defendants") in the form of a temporary restraining order ("TRO"), preliminary injunction, and permanent injunction.

On November 9, 20223, BlueLinx filed an Emergency Motion for TRO (Doc. 6) in which it sought an *ex parte* TRO to restrain Defendants from using its confidential, proprietary, and trade secret information, and to prevent Defendants from soliciting BlueLinx's customers. BlueLinx also sought electronic discovery and the return of information it contends is confidential, proprietary, and trade secret information. For support, BlueLinx relied on its DTSA claim against all Defendants. The court denied this *ex parte* motion on November 14, 2023, before Defendants made an appearance and before summonses were returned executed as to all three Defendants, because it determined that Plaintiff had not satisfied the requirements for *ex parte* relief under Federal Rule of Civil Procedure 65(b).  Doc. 11.  BlueLinx also failed to meet its burden with respect to each of the federal requirements necessary for a TRO.  *Id.*

On December 5, 2023, BlueLinx filed its current Motion (Doc. 17) in which it seeks a preliminary injunction against all Defendants. Based again on its DTSA claim, BlueLinx seeks a preliminary injunction to obtain discovery regarding information in Edwards' and Tucker's possession; to prevent Defendants from using any information it considers to be confidential, proprietary, and trade secret information; and to prevent Defendants from competing with

BlueLinx by contacting BlueLinx's customers. Specifically, Plaintiff seeks a preliminary injunction order that:

> i.      Requir[es] Edwards and Tucker to return all confidential, proprietary, and trade secret information belonging to BlueLinx that is still within their possession, custody, or control.
>
> ii.     Requir[es] Edwards and Tucker to make available for forensic imaging any electronic devices, including smart phones and computers, as well as any external storage devices (such as USB drives), that Edwards or Tucker may have in their possession used to access or copy any of BlueLinx's confidential information or upon which they can access their personal email addresses.
>
> iii.    Requir[es] Edwards and Tucker to make available for forensic review any and all cloud-based storage accounts that Edwards or Tucker may have used to access, store or copy and of BlueLinx's confidential information.
>
> iv.     Enjoin[s] and restrict[s] Edwards and Tucker from using any and all confidential, proprietary, and trade secret information belonging to BlueLinx or on which any of the data from their personal electronic devices described above is stored.
>
> v.      Enjoin[s] and restrict[s] Defendants from retaining, using or disclosing BlueLinx's Trade Secret information, or to call upon, solicit or distribute products to BlueLinx customers disclosed in the Trade Secrets.
>
> vi.     Enjoin[s] and restrict[s] Defendants from calling upon any client identified in the misappropriated trade secrets for the purpose of offering, selling or providing goods in competition with goods offered by BlueLinx.

Pl.'s Mot. 17.

On December 26, 2023, Defendants filed their response in opposition to Plaintiff's Motion and request for a preliminary injunction at 4:45 p.m. Two hours earlier on the same date, BlueLinx filed a Verified First Amended Complaint for Damages and Injunctive Relief ("Amended Verified Complaint") (Doc. 32). BlueLinx's Amended Verified Complaint includes additional causes of action against Defendants, as well as additional factual allegations regarding Defendants' alleged violation of the DTSA. BlueLinx's reply brief, which was filed on December 29, 2023, also relies on and cites to the allegations in the Amended Verified Complaint to support the requested preliminary injunction relief.

## II.     Federal Standard for Preliminary Injunction

As the movant seeking a preliminary injunction, BlueLinx has the burden of establishing

that:

> (1) there is a substantial likelihood that [it] will prevail on the merits; (2) there is a
> substantial threat that irreparable harm will result if the injunction is not granted;
> (3) the threatened injury [to it] outweighs the threatened harm to the defendant[s];
> and (4) the granting of the preliminary injunction will not disserve the public
> interest.

*Clark v. Prichard*, 812 F.2d 991, 993 (5th Cir. 1987); *Canal Auth. of the State of Florida v.
Callaway*, 489 F.2d 567, 572 (5th Cir. 1974) (*en banc*). BlueLinx must satisfy a cumulative
burden of proving each of the four elements enumerated before a preliminary injunction can be
granted. *Mississippi Power and Light Co. v. United Gas Pipeline*, 760 F.2d 618, 621 (5th Cir.
1985); *Clark*, 812 F.2d at 993. Otherwise stated, if BlueLinx fails to meet any of the four
requirements, the court cannot grant the preliminary injunction. The decision whether to grant a
preliminary injunction lies within the sound discretion of the district court. *Weinberger v.
Romero-Barcelo*, 456 U.S. 305, 320 (1982).

## III.     Discussion

### A. The court will not consider the Verified Amended Complaint in ruling on
### Plaintiff's current Motion.

Plaintiff was entitled under the Federal Rules of Civil Procedure to amend its pleadings
once as a matter of course within 21 days after Defendants filed a Motion to Dismiss on
December 5, 2023, which it did by filing its Verified Amended Complaint on December 29,
2023.  *See* Fed. R. Civ. P. 15(a)(1).  Plaintiff's decision to file its Verified Amended Complaint
on the afternoon of Defendants' deadline to respond to its Motion, however, smacks of improper
gamesmanship, particularly in light of its subsequent reliance on and citation to the allegations in
the Verified Amended Complaint in its reply brief that was filed three days later.  Even if
Plaintiff's filing of the Verified Amended Complaint on the afternoon of Defendants' response

deadline was not done in bad faith, the timing of the filing of the amended pleading did not give Defendants sufficient notice of the evidence (verified allegations) on which Plaintiff intended to rely in support of its Motion.  When "a movant has injected new evidentiary materials in a reply without affording the nonmovant an opportunity for further response," the court may in its discretion decline to consider them. *Springs Indus., Inc. v. American Motorists Ins. Co.*, 137 F.R.D. 238, 239-40 (N.D. Tex. 1991). Alternatively, the court may allow the nonmovant an opportunity to file a response to the new materials, followed by an additional final reply brief by the movant. *See id.*

Here, Plaintiff did not seek leave, before or after filing its Motion, to supplement its evidence via the Verified Amended Complaint. Further, Plaintiff has not explained why it could not have submitted the new evidence when it filed its Motion. Accordingly, for this reason and in light of the timing of the evidence being filed the afternoon of Defendants' response deadline, the court will not consider the allegations in the Verified Amended Complaint in ruling on Plaintiff's Motion and current request for a preliminary injunction.

**B. Plaintiff has not established a substantial likelihood of succeeding on the merits of its DTSA claim because it has not met its burden of establishing the existence of a trade secret under the DTSA.**

As before, the court determines that Plaintiff's Motion and evidence are insufficient to demonstrate a substantial likelihood of success on the merits of its trade secret misappropriation claim under the DTSA, but it reaches this conclusion for slightly different reasons.

**1. DTSA Requirements**

Section 1836 of the DTSA permits an "owner of a trade secret that is misappropriated" to bring a civil action "if the trade secret is related to a product or service used in, or intended for use in, interstate or foreign commerce." 18 U.S.C. § 1836(b)(1). To date, the Fifth Circuit has not addressed what is required to state a valid claim for relief under the DTSA. *See Dunster Live,*

*LLC v. LoneStar Logos Mgmt. Co., LLC*, 908 F.3d 948, 950 (5th Cir. 2018) ("[T]his is the first

[DTSA] case that has reached our court[,] . . . [b]ut the appeal does not require us to decide

anything about trade secrets[.]"). Plaintiff acknowledges in its Motion that district courts in this

Circuit have concluded that a claim for misappropriation of trade secrets under the DTSA

consists of the following elements: (1) the existence of "a trade secret"; (2) "misappropriation of

the trade secret by a defendant"; and (3) "use [of the trade secret] in interstate commerce."  Pl.'s

Mot. 6[2] (citing 18 U.S.C. § 1835(b)(1); and *CTCOA, LLC v. NSL Holdings, Inc.*, No. 4:22-CV-

03297, 2022 WL 19978294, at *1 (S.D. Tex. Sept. 30, 2022) (citing *Computer Scis. Corp. v.*

*Tata Consultancy Servs. Ltd.*, No. 3:19-CV-970-L, 2019 WL 2058772, at *3 (N.D. Tex. May 9,

2019)).

The DTSA defines "trade secret" to include:

all forms and types of financial, business, scientific, technical, economic, or
engineering information, including patterns, plans, compilations, program
devices, formulas, designs, prototypes, methods, techniques, processes,
procedures, programs, or codes, whether tangible or intangible, and whether or
how stored, compiled, or memorialized physically, electronically, graphically,
photographically, or in writing if—

(A) the owner thereof has taken reasonable measures to keep such
information secret; and

(B) the information derives independent economic value, actual or
potential, from **not being generally known to, *and* not being readily
ascertainable through proper means** by, another person who can
obtain economic value from the disclosure or use of the information[.]

---

[2] Based on the case authority cited in its Motion, Plaintiff initially took the position that "use" of a trade secret was
required to establish misappropriation under the DTSA, and that this element was satisfied because Defendants have
used or are likely to use BlueLinx's trade secrets. In its reply, Plaintiff changed course and argued that it need not
show Defendants used BlueLinx's trade secrets because misappropriation under the DTSA can also be established
through evidence that a defendant acquired a trade secret through improper means.  The latter argument comports
with some of the factual assertions in Plaintiff's Motion, and it is a correct statement of law, but like many of
Plaintiff's other legal arguments, it was raised for the first time in its reply. Arguments asserted for the first time in a
reply brief based on new facts or new legal theories are disfavored and problematic for the reasons herein discussed.
Moreover, consideration of this new theory of misappropriation in relation to Plaintiff's evidence is insufficient to
show that Tucker's and Edwards' actions in e-mailing the information at issue to their personal e-mail addresses
violates BlueLinx's Employee Handbook or Code of Conduct. Unlike the cases relied on by Plaintiff, BlueLinx's
Employee Handbook and Code of Conduct only preclude use and disclosure of sensitive information, not copying.
*See* Pl.'s App. 178, 215.

18 U.S.C. § 1839(3) (emphasis added).

The DTSA defines the term "misappropriation" to include:

> (A) acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or

> (B) disclosure or use of a trade secret of another without express or implied consent by a person who—

>> (i)    used improper means to acquire knowledge of the trade secret;

>> (ii)   at the time of disclosure or use, knew or had reason to know that the knowledge of the trade secret was—

>>> (I)     derived from or through a person who had used improper means to acquire the trade secret;

>>> (II)    acquired under circumstances giving rise to a duty to maintain the secrecy of the trade secret or limit the use of the trade secret; or

>>> (III)   derived from or through a person who owed a duty to the person seeking relief to maintain the secrecy of the trade secret or limit the use of the trade secret[.]

§ 1839(5). "Improper means" includes theft, misrepresentation, and "breach or inducement of a breach of a duty to maintain secrecy" but "does not include reverse engineering, independent derivation, or any other lawful means of acquisition[.]" § 1839(6)(A)-(B).

Based on *Accresa Health LLC v. Hint Health Incorporated* and DTSA § 1839(3), Plaintiff asserts that trade secrets under the DTSA encompass "all forms and types of financial, business, scientific, technical, economic, or engineering information[] that the owner takes reasonable measures to keep confidential and that derive independent economic value **from not being generally known by _or_ readily accessible to the public**." Pl.'s Mot. 6 (quoting *Accresa Health LLC v. Hint Health Inc.*, No. 4:18-CV-00536, 2020 WL 3637801, at *5 (E.D. Tex. July 6,

2020) (emphasis added and internal citation and quotations omitted); and citing 18 U.S.C. § 1839(3)). Plaintiff further asserts that the "confidential and proprietary information wrongfully obtained by Edwards and Tucker clearly fits within the [DTSA's] definition of a trade secret," and "[p]ricing information and customer lists have been shown to be trade secrets." Pl.'s Mot. 6 (quoting *Hughes v. Age Indus., Ltd.*, No. 04-16-00693-CV, 2017 WL 943423, at *4 (Tex. App.—San Antonio Mar. 8, 2017, no pet.)).[3]

Plaintiff contends that information obtained by Tucker and Edwards pertaining to its "inventory cost data, supplier information, pricing, and customer lists" clearly falls "within the [DTSA's] definition of a trade secret" because "BlueLinx's ability to competitively bid on projects from its customers or potential customers" would be compromised "if a competitor were to have access to [its] cost information related to prices paid by [it] for its products from manufacturers and suppliers[.]" Pl.'s Mot. 6-7 (footnotes omitted). For similar reasons, Plaintiff contends that "BlueLinx['s] profit margin information, both generally and related to specific products, is information that BlueLinx considers confidential and, if publicly known, would allow competitors to undercut BlueLinx's bids for work from [existing] customers and potential customers." *Id.* at 7 (footnote omitted).

According to Plaintiff, it is for this reason that BlueLinx takes steps to keep this information secret and has policies in place for this purpose:

> BlueLinx takes reasonable measures to keep this trade secret information—which is not generally known to the public (and provides BlueLinx with a competitive advantage by not being known)—secret. Specifically, BlueLinx requires incoming employees needing access to confidential information, including Edwards and Tucker, to acknowledge receipt of the BlueLinx Employee Handbook and the Company's Code of Conduct, in which employees promise not to disclose or use any of BlueLinx's Trade Secrets outside of their employment. Indeed, Edwards and Tucker each provided BlueLinx written acknowledgment to abide by these company policies.

---

[3] Plaintiff's legal citation to this case included a pinpoint citation page of *11; however, there are only 6 pages in this opinion, and the quoted language appears at page *4.

>Additionally, BlueLinx restricts access to its ERP system, Agility, which can only be accessed through individualized, password-protected login credentials assigned to authorized individuals. . . . Further, BlueLinx restricts employee access to only that information that is necessary to perform the employee's job duties.

Pl.'s Mot. 7-8. BlueLinx, therefore, argues that, given "the nature of the information taken, and the protections in place related to the same, the stolen information constituted a trade secret under the DSTA." *Id.*

Defendants counter that they were at-will employees of BlueLinx, and Plaintiff's trade secret claim is an improper attempt to enforce a non-competition or non-solicitation covenant that does not exist. Defendants argue that Plaintiff's Complaint, Motion, and evidence do not satisfy the requirements for a trade secret claim under the DTSA. Specifically, Defendants assert that Plaintiff and the case relied on by it, *Accresa Health,* misstate the statutory definition for trade secret under the DTSA, which requires that information derive independent economic value from not being generally known to, ***and*** not being readily ascertainable through proper means. Defs.' Resp. 4-5 (citing *Guy Carpenter & Co., Inc. v. Provenzale*, 334 F.3d 459, 467 (5th Cir. 2003)). Defendants note that the *Accresa Health* case quoted by Plaintiff incorrectly states that a claimant need only establish one of these requirements.

In addition, Defendants contend that Plaintiff does not address in its Motion or Complaint the requirement that information must not be readily ascertainable through proper means. Defendants further contend that, notwithstanding Plaintiff's claims of confidentiality, the information BlueLinx seeks to protect does not satisfy the requirement that information not be readily ascertainable through proper means. In this regard, Defendants argue:

>13. For example, Plaintiff claims that its customer list is a trade secret. However, not all customer lists are trade secrets. *Guy Carpenter & Co., Inc.*, 334 F.3d at 467 (5th Cir. 2003). If the list contains readily ascertainable information, it is not a trade secret. *Id.* Plaintiff states that its customers are "retailers, suppliers and contractors" that use building products. (Dkt. 1 at ¶8). It is axiomatic that

these customers are readily ascertainable by internet search and phone calls. *Id.* at 468, citing[] *Numed, Inc. v. McNutt*, 724 S.W.2d 432, 435 (Tex. App.—Fort Worth, 1987) (finding no trade secret where customer list can be compiled by calling hospitals and doctors and asking the identity of their supplier). Essentially, they are easy to find, especially for "territory managers" that have been in the industry for some time. (Dkt. 1 at ¶¶11-12) (*See* Decs. of Joseph Edwards and Trent Tucker).

14. Likewise, inventory pricing is equally ascertainable by calling suppliers and asking. Purchase orders in their very nature cannot be company secrets because there is an unrelated third party in the transaction that naturally receives this information. This information can be obtained by simply asking the third party. BlueLinx does not keep its vendors secret either. BlueLinx publicly advertises over 40 of its vendors on its website with direct links to the vendors' websites. For example, here are some BlueLinx vendors for OSB and plywood:



**Featured Brands**

Clicking the images below will open vendor websites in a new browser tab.

   



15. Interestingly, on BlueLinx's website it makes publicly available that Protecto Wrap is one of its vendors. (https://bluelinxco.com/weatherization/) This is one of the few vendors Plaintiff takes issue with by name. (*See* Dkt. 18 p. 61, Dec. of Spencer D. Sager). Apparently, Plaintiff considers reaching out to a vendor that BlueLinx makes publicly known is somehow evidence of malfeasance. Further, clicking on the Protecto Wrap link on BlueLinx's website allows you to find the vendor sales team for each territory, including Colorado as referenced by Mr. Sager in his declaration.



16. And the Plaintiff leaves the Court to guess as to what trade secret information is contained in a "sales report" as referred to in Exhibits 2-A and 2-J. Moreover, that information was sent to a BlueLinx customer by Trent Tucker within the scope of his employment. (*See* Dec. of Trent Tucker). Plaintiff seems to have done a wide sweep for information without bothering to check its contents or destination.

17. Nonetheless, whether the information sought to be protected is not readily ascertainable by proper means is an essential element of the Plaintiff's claim and the Plaintiff has provided no evidence to support this element. And as demonstrated, certain "trade secret" information can be found publicly with a few clicks of the button, which explains the striking absence of evidence for this essential element.

Defs.' Resp. 5-7.

Plaintiff clarifies in its reply that it is not asking the court to create restrictive covenants or enjoin Defendants from competing against it. Plaintiff contends that it simply requests that Defendants be required to compete in a lawful manner and enjoined from "using BlueLinx's trade secrets." Pl.'s Reply 1. Plaintiff asserts that Defendants' response does dispute that Tucker

and Edwards took BlueLinx's trade secret information, and it is "wholly deficient of any evidence, aside from Edwards['] and Tucker's self-interested, conclusory declarations." *Id.*

Plaintiff also argues that it has met its burden of demonstrating the existence of a trade secret as required for establishing a substantial likelihood of success on the merits of its DTSA claim. Plaintiff contends that it is undisputed that Tucker and Edwards emailed information they obtained through their employment at BlueLinx to their personal e-mail accounts, and the information was used in interstate commerce. Thus, Plaintiff argues that the "only real issue" Defendants raise in responding to BlueLinx's Motion is whether BlueLinx has sufficiently demonstrated that the information at issue is "not readily ascertainable by proper means." *Id.* at 2. According to Plaintiff, it has satisfied its burden in this regard for a number of reasons, which the court addresses in the next section.

### 2. Discussion

#### a. Plaintiff's Motion does not address the requirement that information must not be readily ascertainable through proper means to qualify as a trade secret under the DTSA.

As indicated, Plaintiff contends in its reply that it has met its burden of establishing the existence of a trade secret under the DTSA, including the requirement that information must not be readily ascertainable through proper means. Defendants correctly note, however, that Plaintiff's Complaint does not include a single reference to this requirement. Likewise, Plaintiff's Motion does not address this requirement in any detail or explain why BlueLinx's evidence satisfies the requirement that information not be readily ascertainable through proper means. Instead, Plaintiff's Motion simply sets forth what BlueLinx mistakenly believes is the law applicable to this requirement. For the reasons already explained, even the summary of the law in Plaintiff's Motion is incorrect because the case it relies on describes the DTSA's requirements for a trade secret in the disjunctive. In an effort to cure this oversight and the

notable absence of any discussion in its Motion regarding the requirement that information must not be readily ascertainable through proper means, Plaintiff raises a handful of *new* legal arguments for the first time in its reply, which "for obvious reasons . . . is not the appropriate vehicle for presenting new arguments or legal theories to the court." *AAR, Inc. v. Nunez*, 408 F. App'x 828, 830, 2011 WL 135815 (5th Cir. 2011) (per curiam) (citations omitted).

### b. Plaintiff conflates the federal and Texas legal standards for injunctive relief.

Plaintiff first contends that "***trade secrets are entitled to trade secret protection until trial***" because, "[i]n the context of a preliminary injunction, 'the trial court does not decide whether the information sought to be protected is a trade secret," but instead determines whether the movant "has established [that] the information is entitled to trade secret protection until a trial on the merits."  Pl.'s Reply 2 (quoting *First Command Fin. Planning, Inc. v. Velez*, No. 4-16-CV-01008-O, 2017 WL 2999405, at *8 (N.D. Tex. May 8, 2017); and citing *Computer Scis. Corp. v. Tata Consultancy Servs. Ltd.*, No. 3:19-CV-970-L, 2019 WL 2058772, at *3 (N.D. Tex. May 9, 2019)).

This is a new legal argument that Plaintiff raised for the first time in its reply. BlueLinx did not seek leave to present this new legal argument. Additionally, Plaintiff does not explain why this argument was not raised in the first instance in its Motion. Defendants consequently did not have an opportunity to respond it. As this is BlueLinx's second attempt at obtaining injunctive relief, the court sees no reason why this argument could not have been raised in Plaintiff's Motion.  In *AAR, Incorporated*, the Fifth Circuit explained that courts are not required to consider "new reply arguments in the absence of extraordinary circumstances." 408 F. App'x at 830 (citations omitted). Even if a new issue raises a pure question of law, the extraordinary circumstances exception does not apply when a party fails to explain its failure to raise the issue earlier or fails to show "any unique harm" that would "make the result manifestly unfair." *Id.*

Like *AAR, Incorporated*, the court determines that the exceptional circumstances exception does not apply here for the reasons stated.

Moreover, even if the court considers this new argument, it does not assist Plaintiff because it is legally flawed and premised on an incorrect understanding of the legal standard applicable to a request for a preliminary injunction under federal law. *First Command Financial Planning* involved a request for a temporary restraining order under federal law based on the plaintiff's trade secret claim under the Texas Uniform Trade Secret Act ("TUTSA"), which is similar in some respects to the DTSA. Plaintiff's reply correctly quotes *First Command Financial Planning* to say: "In the context of a preliminary injunction, 'the trial court does not decide whether the information sought to be protected is a trade secret. Rather, it determines whether the applicant has established [that] the information is entitled to trade secret protection until a trial on the merits.'" *First Command Fin. Planning, Inc.*, No. 2017 WL 2999405, at *6 (citations omitted). For support, the court in *First Command Financial Planning* cited a number Texas state cases, which in turn applied Texas's legal standard for a temporary injunction. *See id.* The court in *First Command Financial Planning* then proceeded to conclude that the plaintiff satisfied this legal standard and, therefore, had "sufficiently established that its non-public client lists, with associated contact information, are likely trade secrets and are entitled to trade secret protection until a trial on the merits." *Id.*

The legal standard applicable to requests for injunctive relief in federal court, however, is the federal one set forth supra in Section II, which is more demanding than Texas's standard for injunctive relief. The court in *First Command Financial Planning* recognized as much but incorrectly grafted the Texas legal standard onto the federal one in determining whether the plaintiff had demonstrated a substantial likelihood of succeeding on the merits of its TUTSA claim, thereby reducing the plaintiff's burden and alleviating it from having to establish all of the

elements of its TUTSA claim.  In *Computer Sciences Corporation*, which involved both TUTSA and DTSA claims and a motion for temporary restraining order, the undersigned inadvertently made the same mistake based on the reasoning in *First Command Financial Planning*. *See Computer Scis. Corp.*, 2019 WL 2058772, at *3.

Specifically, *Computer Sciences Corporation* sets forth the appropriate federal standard for injunctive relief, but in determining whether the plaintiff satisfied the first requirement for relief under this standard, the court mistook the Texas legal standard for injunctive relief as an element of the plaintiff's TUTSA and DTSA claims and similarly concluded that, "[a]t the temporary restraining order stage, a court does not determine that the information at issue is a trade secret; rather, it determines 'whether the applicant has established that the information is entitled to trade-secret protection until the trial on the merits.'" *Computer Scis. Corp*., 2019 WL 2058772, at *3 (quoting *First Command Fin. Planning, Inc.*, 2017 WL 2999405, at *8). Accordingly, even if this legal argument had been raised in Plaintiff's Motion, it does not relieve it from having to satisfy each of the federal requirements for injunctive relief, and all of the elements of its federal cause of action under the DTSA, including the statutory requirement that information must not be readily ascertainable through proper means to qualify as a trade secret.

### c. Conclusory and unsupported statements are insufficient to satisfy Plaintiff's burden.

Plaintiff next argues that the information at issue qualifies as a trade secret under the DTSA because it is not limited to publicly available information regarding customers and vendors, but also concerns "BlueLinx's product mix, inventory levels, vendors, and specific cost to BlueLinx of items purchased from various vendors."  Pl.'s Reply 3 (citing Pl.'s App. 132, Wilson Decl. ¶ 6; and Pl.'s App. 127-28, Sager Decl. ¶¶ 6, 8). In addition, Plaintiff contends that, even readily available information may qualify as a trade secret if it was difficult and expensive

for the plaintiff to compile it.[4]  Pl.'s Reply 3 (quoting *360 Mortgage Grp., LLC v. Homebridge Fin. Servs., Inc.*, No. A-14-CA-00847-SS, 2016 WL 900577, at *4 (W.D. Tex. Mar. 2, 2016); and citing *Staffing, Inc. v. Quest Staffing Grp., Inc.*, 335 F. Supp. 3d 856, 863 (E.D. Tex. 2018)). These are new legal arguments based on previously submitted evidence and, thus, should have been raised in Plaintiff's Motion.[5]  In any event, they fail for the reasons that follow.

In paragraph 6 of his declaration, Michael Wilson, BlueLinx's Chief Product Management Officer, states that certain information was treated by BlueLinx as confidential:

> 6. Exhibits 2A, 2B, 2I, 2J, 2K, 2O, 2P, 2Q, 2R, 2S, and 2T are emails containing and/or attaching trade secret or other confidential business information regarding the Company's product mix, inventory levels, vendors, and the specific cost of items purchased by BlueLinx from various vendors for resale is confidential information that is not shared with the public, customers of the Company, or BlueLinx's competitors.

Pl.'s App. 132 ¶ 6.

---

[4] Plaintiff also contends, based on the allegations in its Verified Amended Complaint, that "the customer information obtained by Defendants includes information concerning customers' active project sites, decision makers, needs, and purchase history (along with BlueLinx's financial and profit margin information)."  Pl.'s Reply 3-4 (citing Pl.'s Verified Am. Compl. ¶ 13).  For the reasons already explained, the court, out of fairness, will not consider arguments or evidence derived from Plaintiff's Verified Amended Complaint that was filed after Defendants responded to Plaintiff's Motion.

[5] Based on Wilson's and Sager's declarations, Plaintiff contends in its Motion that:

> The Trade Secrets are strictly confidential and proprietary and are only accessible to certain BlueLinx employees through secure servers. If obtained by a competitor, the Trade Secrets would give the competitor an unfair head start competing against BlueLinx. The competitor would avoid an investment (already made by BlueLinx) in time, effort, and capital necessary to collect and develop information about particular customer decision makers, pricing, and product costs (which would allow a competitor to undercut BlueLinx when bidding for orders), and proper inventory levels (which would allow a competitor to take advantage of BlueLinx historical knowledge regarding market tends for certain types of products).

Pl.'s Mot. 2 (footnotes omitted). Plaintiff, however, did not argue in its Motion that BlueLinx's efforts to collect and develop such information was an exception to the requirement that information must not be readily ascertainable through proper means, or that its evidence of BlueLinx's efforts to collect and develop information satisfied this exception. Plaintiff also relied on paragraphs 8 through 9 of Larry Todd Skaggs's declaration, but his declaration does not address BlueLinx's efforts to collect and develop information.

In paragraphs 6 and 8 of his declaration, Spencer D. Sager, the Sales Manager for BlueLinx's Dallas, Fort Worth ("DFW") facility, similarly states that certain information was treated as confidential by BlueLinx:

> 6. Information regarding the profit margins of BlueLinx DFW facility, both generally and with respect to specific products, is information we treat as confidential and we do not share such information with our customers or competitors.

> 8. Similarly, cost information related to the price BlueLinx pays for products obtained from manufacturers is also treated as confidential and is not shared with customers or competitors of BlueLinx.

Pl.'s App. 127-28.

While these statements in Mr. Wilson's and Mr. Sager's declarations indicate that BlueLinx treats certain information as confidential, they do not address the issue of whether the information referenced is readily ascertainable through proper means. Plaintiff also fails to explain in its reply or via other evidence why the information referenced in Mr. Wilson's and Mr. Sager's declaration is not readily ascertainable through proper means. Moreover, evidence that BlueLinx treats such information as confidential, without more, is not probative of whether the same information can be readily ascertained through proper means from other sources.

The statements in these paragraphs of Mr. Wilson's and Mr. Sager's declaration also fail to support Plaintiff's reliance on the exception that readily ascertainable information may qualify as a trade secret under the DTSA "given the difficulty and expense of compiling the information." Pl.'s Reply 3 (citations omitted).  Specifically, neither Mr. Wilson nor Mr. Sager indicates that BlueLinx compiled the information referenced in these paragraphs or mentions the effort and expense undertaken by BlueLinx to do so.

In reviewing both witnesses' declarations, the court did notice that other portions of the declarations not cited in Plaintiff's reply touch on BlueLinx's efforts to compile *other* information. For example, Mr. Sager states in paragraph 12 of his declaration that "I have

developed strong relationships with the vendors from whom I purchase products for BlueLinx as a result of investing a substantial amount of time, over a number of years, in my communications and interactions with the vendors." Pl.'s App. 128 ¶ 12.  This statement, though, is too vague and does not specifically address whether and to what extent BlueLinx undertook efforts and incurred expense to compile the information it maintains as confidential.

Mr. Wilson states in paragraph 8 of his declaration that BlueLinx "spent significant time and resources" compiling information contained in other exhibits:

> 8. . . . Exhibits 2C, 2D, 2E, 2F, 2G, 2H, 2L, 2M, and 2N are e[-]mails containing and/or attaching trade secret or other confidential business information pertaining to BlueLinx's customers and customer lists. This information is not publicly known, but rather, [is] generated and compiled internally within BlueLinx. BlueLinx has spent significant time and resources to cultivate the information located within these exhibits.

Pl.'s App. 133 ¶ 8. This statement focuses more BlueLinx's efforts and expense to compile some of the information now sought to be protected, but like Mr. Sager's statement, it is conclusory and too vague, which is insufficient to satisfy BlueLinx's burden as the party seeking a preliminary injunction.[6]  As with the other information and exhibits referenced by Mr. Wilson in paragraph 6 of his declaration, this statement also includes no explanation as to why this information is not readily ascertainable through proper means.

Moreover, after reviewing the exhibits referenced in Mr. Wilson's declaration, the court's opinion is unchanged.  As Defendants correctly note, it is obvious that a number of these exhibits includes information or compilations of information that were prepared by third parties, and some of it is even publicly available on the internet.  Mr. Wilson describes some exhibits as containing "Ship-to Data." *See* Pl.'s App. 131-32. He states that the spreadsheets in these

---

[6] *See Higgins v. Lumpkin*, No. 21-20058, 2022 WL 1517039, at *1 (5th Cir. May 13, 2022) ("[U]nsupported and conclusory allegations show neither a likelihood of success on the merits, nor an irreparable injury warranting a preliminary injunction."); *Hunt v. Bankers Tr. Co.*, 646 F. Supp. 59, 66 (N.D. Tex. 1986) (explaining that conclusory statements and generalities are insufficient to satisfy the requirements for injunctive relief) (citations and internal quotation marks omitted).

exhibits were prepared by BlueLinx, but the spreadsheets appear to simply contain shipping addresses for BlueLinx customers, and it is unclear from Plaintiff's Motion or evidence why this information would not be readily ascertainable through proper means.

Other exhibits referenced by Mr. Wilson are purchase orders that BlueLinx presumably mailed to various distributors. Mr. Wilson describes these exhibits as containing purchase orders and "distributor information," but it is unclear why Plaintiff believes that the information contained in these purchase orders such as the distributors mailing address could not be readily ascertained through proper means. According to Mr. Wilson, Exhibit 2P is an e-mail by Edwards forwarding pricing lists. Examination of this e-mail reveals that it was forwarded to a third party—lucy.candia@bldr.com—which refutes BlueLinx's assertion that such information is treated as confidential and not shared outside of BlueLinx.  Other e-mails simply include the name of a buyer or requests by a BlueLinx employee to a third party for an e-mail address and information needed by BlueLinx to submit orders.

As Plaintiff did not take the effort to explain the import of each of the exhibits referenced by Mr. Wilson that it contends include confidential, proprietary, and trade secret information, the court declines to address them in any more detail than it already has done.  *See Petrello v. Nath*, 350 F. App'x 887, 890, 2009 WL 3416230, at *3 (5th Cir. 2009) (explaining that a district court's granting of a preliminary injunction must be supported by findings and conclusions similar to those required by Federal Rule of Civil Procedure 52, but this rule requires neither "punctilious detail nor slavish tracing of the claims" issue by issue and witness by witness) (quoting *Cox v. City of Dallas*, *Tex.*, 430 F.3d 734, 747 (5th Cir. 2005)).

For the same reason, the court declines to speculate whether the information in the exhibits actually satisfies the requirements for trade secret status under the DTSA. While the evidence and appendix submitted by Plaintiff in support of its Motion is fairly voluminous (276

pages), Plaintiff's general and conclusory assertions about the information constituting trade secrets, without more, are not sufficient to meet its burden of showing that the information is not readily ascertainable through proper means or an exception to this requirement. *See Higgins*, 2022 WL 1517039, at *1; *Hunt*, 646 F. Supp. at 66.

> ### d. Plaintiff's contention that readily available information is protected as a trade secret if obtained from a former employer is an inadequately-briefed new legal argument.

Plaintiff also contends for the first time in its reply that, "it is undisputed Defendants actually acquired BlueLinx's alleged trade secret materials via Tucker's and Edwards' emailing such information to their personal email accounts, which . . . is in itself sufficient to establish DTSA liability."  Pl.'s Reply 2.  More specifically, Plaintiff asserts that "[g]enerally, Texas courts will find that readily available information will be protected as a trade secret 'if the competitor obtained it working for the former employee.'"  *Id.* at 4 (quoting *360 Mortg. Grp., LLC*, 2016 WL 900577, at *4, which quotes *Alliantgroup, L.P. v. Feingold*, 803 F. Supp. 2d 610, 626 (S.D. Tex. 2011); and citing *M.N. Dannenbaum, Inc. v. Brummerhop*, 840 S.W.2d 624, 632 (Tex. App.—Houston [14th Dist.] 1992, writ denied)). Plaintiff argues that "[a]ltogether, BlueLinx has sufficiently demonstrated [that] the alleged trade secrets are not readily ascertainable" because it has "presented uncontroverted evidence that, prior to their resignations at BlueLinx, Edwards and Tucker repeatedly downloaded and forwarded BlueLinx's Trade Secrets to their personal email accounts" in violation of BlueLinx's Employee Handbook and Code of Conduct.  Pl.'s Reply 4 (citing Pl.'s App 8, Durant Decl. ¶ 9).

There are a number of problems with this legal argument. Although Plaintiff has consistently taken the position that Tucker's and Edwards' conduct in e-mailing information to their personal e-mail accounts while still employed by BlueLinx is evidence that they misappropriated BlueLinx's confidential, proprietary, and trade secret information, it did not

argue in its Motion that this satisfied BlueLinx's burden of establishing the existence of a trade secret or that such evidence relieved BlueLinx of showing that the information was not readily ascertainable through proper means.  Thus, this is yet another new legal argument by Plaintiff. Also, for the reasons already explained, Plaintiff's evidence that Tucker and Edward e-mailed information to their personal e-mail accounts does not appear to violate the plain language of BlueLinx's Employee Handbook or Code of Conduct because these policies only preclude use and disclosure, not copying.

The court also questions the applicability of the reasoning in the cases cited by Plaintiff. As a preliminary matter, the three cases relied on by Plaintiff are not binding on the court.  None involved DTSA claims.  They, instead, dealt with misappropriation of trade secret claims under Texas' TUTSA statute or common law.  In many respects, TUTSA and the DTSA are similar, and, consequently, it is not uncommon for courts dealing with DTSA claims to cite cases involving TUTSA claims.

The undersigned, however, questions the relevance or utility of cases in which courts rely on Texas common law that predates TUTSA[7] and eliminates the requirement that information not be readily ascertainable through proper means, as required by the DTSA. If Plaintiff had raised this legal argument in its Motion, Defendants would have had an opportunity to address it in their response, and the court's concern in this regard may have been alleviated. Because Plaintiff could have raised this argument in its Motion, and its reply does not adequately explain or even address the relevance of pre-TUTSA law to its DTSA claim and the DTSA's requirement that information must not be readily ascertainable through proper means to qualify as a trade secret. The court, therefore, declines to consider this new and inadequately briefed

---

[7] TUTSA governs trade secret misappropriation claims occurring after September 1, 2013. *See* Act of April 23, 2013, 83rd Leg., R.S., ch. 10, § 4, 2013 Tex. Sess. Law Serv. (codified at Tex. Civ. Prac. & Rem. Code § 134A.001–008).

legal argument or address it in any more detail than it already has in ruling on Plaintiff's Motion. Accordingly, this new argument does not satisfy Plaintiff's burden of establishing the existence of a trade secret.

> **e. Plaintiff, not Defendants, has the burden of establishing that information was not readily ascertainable through proper means.**

Throughout their reply, Plaintiff argues that it has established a likelihood of success on the merits of its DTSA claim because Defendants do not dispute that Tucker and Edwards e-mailed certain information to their personal e-mail addresses.  Plaintiff further asserts that Defendants offer no explanation as to why Tucker and Edwards did this during their employment, and such failure undermines any contention that they could have readily ascertained the information through other means after they left BlueLinx.  Plaintiff, therefore, contends that Defendants have not offered any controverting evidence other than their self-interested declarations, which, even if considered, are insufficient to rebut BlueLinx's uncontroverted evidence.

Plaintiff misapprehends the parties' respective burdens. Plaintiff, not Defendants, have the burden of proof as the movant seeking a preliminary injunction, and the burden of persuasion as to all four requirements for a preliminary injunction remains at all time with it. *See Canal Authority*, 489 F.2d at 573 (holding that the district court erred in shifting burden to the defendant because "[u]nder the proper view of the law, it should not have been incumbent upon the defendants to prove by a preponderance of the evidence, much less to a probable environmental and ecological certainty, that the interests they represent would suffer irreparable harm. The burden of persuasion on all of the four requirements for a preliminary injunction is at all times upon the plaintiff.") (internal quotation marks omitted); *see also See Future Proof Brands, L.L.C. v. Molson Coors Bev. Co.*, 982 F.3d 280, 288 (5th Cir. 2020) ("A preliminary injunction is 'an extraordinary remedy which should not be granted unless the party seeking it

has clearly carried [its] burden of persuasion'" with respect to all four requirements.) (citation omitted). For the reasons previously discussed, the court also concluded that Plaintiff's arguments and evidence are insufficient to meet its burden, so there was no need for the undersigned to even review Defendants' evidence in determining whether a hearing was needed to resolve any factual disputes before ruling on Plaintiff's Motion. *See Kaepa, Inc. v. Achilles Corp.*, 76 F.3d 624, 628 (5th Cir. 1996) (explaining that, in the absence of a factual dispute, "no oral hearing is required; . . . the parties need only be given 'ample opportunity to present their respective views of the legal issues involved.'").

As Plaintiff has not established, by a preponderance of the evidence, each element of its DTSA claim, it has not met its burden of demonstrating a substantial likelihood of succeeding on the merits of this claim, and it is not entitled to a preliminary injunction.  Given the court's determination that BlueLinx has not satisfied the first requirement for a preliminary injunction, it need not address whether BlueLinx has satisfied the remaining requirements for a preliminary injunction under federal law in ruling on its Motion.

## IV.  Motion for Leave to Seal Exhibits Filed in Support of Motion for Preliminary Injunction

Common law presumes a right of public access to judicial records. *See Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 597 (1978). The Fifth Circuit, therefore, recognizes a "presumption . . . that judicial records should not be sealed." *June Med. Servs., LLC v. Phillips*, 22 F.4th 512, 521 (5th Cir. 2022). "This right promotes the trustworthiness of the judicial process, curbs judicial abuses, and provides the public with a better understanding of the judicial process, including its fairness, and serves as a check on the integrity of the system." *Bradley v. Ackal,* 954 F.3d 216, 224 (5th Cir. 2020). When a party requests a seal order or objects to an unsealing order, courts must carefully balance the competing interests that are at stake in the case. *See Nixon*, 435 U.S. at 599.

"At the discovery stage, when parties are exchanging information, a stipulated protective order under Rule 26(c) may well be proper." *June Med. Servs.*, 22 F.4th at 521 (quoting *Binh Hoa Le v. Exeter Fin. Corp.*, 990 F.3d 410, 419 (5th Cir. 2021)). "But at the adjudicative stage, when materials enter the court record, the standard for shielding records from public view is far more arduous." *Id.* (quoting *Binh Hoa Le*, 990 F.3d at 419). A "good cause" standard "applies to protective orders sealing documents produced in discovery," whereas a stricter balancing test applies "[o]nce a document is filed on the public record," that is, "when a document becomes a judicial record" as a result of it being filed in connection with a pretrial motion that requires the court to resolve a merits-based issue. *Binh Hoa Le*, 990 F.3d at 419 & n.31 (footnotes and internal quotation marks omitted). "Under both standards, the working presumption is that judicial records should not be sealed." *Id.* at 419. "To decide whether something should be sealed, the court must undertake a document-by-document, line-by-line balancing of the public's common law right of access against the interests favoring nondisclosure." *June Med. Servs.*, 22 F.4th at 521 (internal quotations omitted).

The stricter standard applies here because BlueLinx seeks to maintain under seal the exhibits submitted in support of its publicly filed Motion for Preliminary Injunction. Plaintiff's Motion for Leave fails for essentially the same reasons its request for a preliminary injunction fails—Plaintiff argues in conclusory and general fashion that the information contained in these exhibits constitute trade secrets. Plaintiff argues that the Fifth Circuit in *Binh Hoa Le* acknowledged that, even under this stricter standard, litigants may have good reason to file documents under seal to protect trade secrets. Pl.'s Mot. for Leave 5 (citing *Binh Hoa Le*, 990 F.3d at 419). Plaintiff, however, has not shown that its evidence qualifies as trade secrets under the DTSA.

Plaintiff also contends that the court need not determine that the information in question constitutes trade secrets in order; that it can grant Plaintiff's Motion for Leave and allow the evidence to be filed and maintained under seal because it has made a sufficient showing to warrant placing the information under seal until such time as this issue can be finally resolved on the merits. For support, Plaintiff cites *ThermoTek, Inc. v. WMI Enters., LLC*, No. 3:10-CV-2618-D, 2011 WL 1485421, at *9 (N.D. Tex. Apr. 19, 2011), but *ThermoTek* predates *Binh Hoa Le*, and involved the sealing of documents under Rule 26(c), which implicates a less stringent standard. Accordingly, Plaintiff's Motion for Leave fails to overcome the presumption that these exhibits, which are now part of the judicial record in this case, should not be sealed. *See June Med. Servs*., 22 F.4th at 521.

## V.    Conclusion

For all of the foregoing reasons, the court **denies** Plaintiff's Motion for Preliminary Injunction (Doc. 17); and **denies** Plaintiff's Motions for Leave to File Certain Exhibits Under Seal (Docs. 19, 20). BlueLinx failed to meet its burden of showing that the evidence filed in support of its request for a preliminary injunction warrant sealing under Fifth Circuit and Supreme Court precedent. BlueLinx also failed to meet its burden of establishing each of the four requirements for the extraordinary relief of a preliminary injunction under federal law. Additionally, Plaintiff's Motion did not include many of the arguments raised for the first time in its reply. It is unclear whether Plaintiff would be able to cure the deficiencies identified. Nevertheless, the court will not entertain any further motions for preliminary injunction, as BlueLinx has had two opportunities to make its case for pretrial injunctive relief, and further motions by it for such relief will only waste scarce judicial resources and unnecessarily delay the resolution of this litigation. Additionally, the discovery BlueLinx seeks via a preliminary injunction can be sought and obtained through the normal discovery process in this case.

**It is so ordered** this 24th day of June, 2024.

Sam A. Lindsay
United States District Judge